UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MILAGROS CALVO,

      Plaintiff,

v.                                             CASE No. 8:12-CV-1485-T-TGW

CAROLYN W. COLVIN,[1]
Commissioner of Social Security,

      Defendant.

_____

O R D E R

      The plaintiff in this case seeks judicial review of the denial of

her claim for supplemental security income payments.[2] Because the decision

of the Commissioner of Social Security is supported by substantial evidence

and does not contain any reversible error, the decision will be affirmed.

I.

      The plaintiff, who was forty-seven years old at the time of the

administrative hearing and who completed university courses in her native

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security and should, therefore, be substituted for Commissioner Michael J. Astrue as defendant in this action. See 42 U.S.C. 405(g); Fed.R.Civ.P. 25(d).

[2] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 14).

country of Cuba, has worked as a cafeteria worker, housekeeper, machine operator, salesperson, and packager (Tr. 34-36, 318). She filed a claim for supplemental security income payments, alleging that she became disabled due to "degenerative osetophyte and disk complex at l4, l5 and both legs" (Tr. 317). The claim was denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of degenerative disc disease, knee pain, diabetes mellitus, and anxiety (Tr. 20). The law judge concluded that, despite these impairments, the claimant has the residual functional capacity to perform light work with the following limitations (Tr. 22):

> [S]he needs a sit/stand option. She cannot perform repetitive stooping or bending. Her tasks should be simple and repetitive requiring moderate concentration, and she should have low stress, moderate socialization, no stringent production goals or time targets, and no public contact.

The law judge clarified in his hypothetical question to a vocational expert that "moderate concentration" and "moderate socialization" referred to the degree of the plaintiff's deficits in these areas (Tr. 45).

The law judge found that these limitations precluded the plaintiff from performing her past work (Tr. 24, see Tr. 45-46). However, based upon the testimony of a vocational expert, the law judge ruled that there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, such as small production assembler, polypack heat sealer, and final inspector (Tr. 25, see Tr. 46). The law judge therefore decided that the plaintiff was not disabled (Tr. 25). Accordingly, the Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

## II.

In order to be entitled to supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 1382c(a)(3)(D).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

-4-

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

### III.

The plaintiff argues that the law judge mischaracterized the medical evidence regarding the plaintiff's mental impairments, and erred by failing to find the plaintiff's obesity was a severe impairment (Doc. 24, p. 2). Neither argument is meritorious.

A.  With regard to the plaintiff's mental functioning, the law judge found that the plaintiff suffers from the severe impairment of anxiety (Tr. 20).  The law judge determined that, with that impairment, the plaintiff had no restrictions in activities of daily living, moderate difficulties in social functioning, mild difficulties in concentration, persistence or pace, and no episodes of decompensation (Tr. 21).   However, apparently giving the

plaintiff the benefit of the doubt, the law judge included in the plaintiff's

mental residual functional capacity moderate deficits in both social

functioning and concentration, persistence or pace (Tr. 22). Thus, the law

judge asked the vocational expert to assume (Tr. 45):

> both a moderate concentration and a moderate
> socialization deficit. The moderate concentration
> deficit would preclude complex and detailed job
> tasks, but permit simple routine repetitive tasks
> embraced by the unskilled and lower end semi-
> skilled occupational base. Moderate socialization
> deficit would preclude jobs other than those
> vocationally considered as low stress. And low
> stress for the purposes of your analysis in this case
> would include the absence of stringent production
> goals, or stringent time targets, as well as public
> contact.

Significantly, the plaintiff does not identify in her memorandum any

additional mental functional limitation that the law judge should have

included in the residual functional capacity (see Doc. 24, p. 7).

In response to the hypothetical question, the vocational expert

testified that there are light jobs existing in the national economy in

significant numbers that the plaintiff could perform, such as small products

assembly, polypacker and heat sealer, and final inspector (Tr. 46). In sum, the

law judge accepted that the plaintiff has substantial functional limitations due to her mental impairments and, based on the testimony of the vocational expert, determined that these limitations did not disable her from gainful employment.

In determining the plaintiff's residual functional capacity, the law judge considered the plaintiff's testimony that anxiety has greatly affected her life, but rejected for several reasons the plaintiff's contention that her mental limitations were totally disabling (Tr. 23). Thus, the law judge considered the plaintiff's own statements that "her concentration is fine," and that she drives and shops on her own, which are activities the law judge stated someone with severe anxiety would not likely perform (Tr. 21, 23). Further, the law judge noted that the plaintiff's treatment history for mental health issues has been "exceedingly sparse" (Tr. 23). Additionally, the plaintiff reported that medication was helping (id.; see Tr. 38, 495, 798). The law judge also gave some weight to the opinion of consultative psychological examiner, Felix J. Subervi, III, Ph.D., who observed that the plaintiff's mental status examination was essentially normal, but assessed the plaintiff with a GAF (global assessment of functioning) score of 50 (Tr. 24; see Tr. 457-60).

The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 50 is at the top of the range (41-50) of serious impairments in social, occupational or school functioning. Id. The Commissioner has declined to endorse the GAF scale for use in Social Security programs. Wind v. Barnhart, 133 Fed. Appx. 684, 692 n. 5 (11th Cir. 2005). Thus, a single GAF score does not provide solid evidence of a severe mental impairment, especially where, as here, the score was assigned the first time the psychologist saw the plaintiff. See DeBoard v. Commissioner of Social Security, 211 Fed. Appx. 411, 417 (6th Cir. 2006). Nevertheless, the law judge assigned some weight to this GAF score, but noted that it was assessed "prior to [the plaintiff] ever having received psychiatric treatment" (Tr. 24).

The law judge's determination that the plaintiff has moderate, but not disabling, mental deficits is reasonable and supported by substantial evidence. Thus, the plaintiff's mental health treatment history is sparse, and other than an anxious and depressed mood, her mental status examinations

were essentially normal. For example, former treating psychiatrist Dr. A.K. Vijapura observed that, despite the plaintiff's reports of anxiety and being upset, she was alert and oriented x3, appropriately dressed, exhibited normal speech, good comprehension, and was friendly and cooperative (Tr. 800). Additionally, consultative psychologist Dr. Subervi noted that the plaintiff's behavior and speech were normal; she was oriented as to person, place and situation; there was no abnormality in thought content; she was not delusional, suicidal or homicidal; her judgment appeared to be appropriate; and her concentration and general insight level were fair (Tr. 459). Further, consultative physical examiners Dr. Owen Smith and Dr. L.D. Gedia observed that the plaintiff was alert, oriented x3, and her thought processes were normal (Tr. 429, 465).[3] Notably, the plaintiff testified at the hearing, and reported to physicians, that it was her physical pain, not her mental ailments, that caused her to stop working and prevented her from returning to work (Tr. 36, 42-43, 125, 317, 457, 665, 807).

---

[3]The record also includes notations from several other physicians that, despite assessments of depression, the plaintiff's appearance and mental status examinations were otherwise normal. See, e.g., Tr. 790, 813, 862, 864. Furthermore, although the plaintiff testified that she was irritable and argumentative, she was noted by the Social Security representative and multiple physicians to be cooperative and/or very pleasant (Tr. 128, 314, 629, 806).

Additionally, non-examining reviewing psychologists Michael Stevens, Ph.D., and Trina Christner-Renfroe, Psy.D, found the plaintiff's mental impairments were not even severe (Tr. 466, 530). In this connection, they opined that the plaintiff's limitations are primarily caused by physical, not mental, impairments (Tr. 478, 542).   Dr. Christner-Renfroe also stated (Tr. 478):

> [The plaintiff's] claim to be totally dependent on her son is a gross exaggeration of her mental condition; the ability to drive herself to the psy[chological]  ce [consultative examination] shows she is more independent than she tried to portray herself to the psy vendor. [The plaintiff] appears to have a personality disorder with histrionic features. ADLs reported to psy vendor: cl[aimant] drove to the evaluation. Cl[aimant] answered in complete sentences, thus socialization is appropriate. Notably, cl[aimant] admitted to the psy vendor her ability to work is limited due to the physical.[4]

In sum, there is ample evidentiary support for the law judge's determination of the plaintiff's mental residual functional capacity, and the

---

[4]The plaintiff was also noted to exaggerate her limitations during a hospital emergency room visit in March 2011 (Tr. 853). Thus, Dr. Tabitha Campbell said that the plaintiff is "movi[ng] well when not being watched, but develops stiff movement when staff is in the room" (id.)(see also Tr. 854).

plaintiff has not identified any evidence which compels a finding she is mentally incapacitated, or even that she has additional mental functioning limitations not found by the law judge.

In support of her contention that the law judge mischaracterized the evidence of her mental impairments, the plaintiff contends, unpersuasively, that the law judge should not have considered representations she made in an October 2009 Function Report because they were made nearly two years prior to the administrative hearing (Doc. 24, pp. 6-7). The plaintiff stated in that Function Report that she drives a car, shops on her own, she is able to pay attention, and she spends time with her son and telephones friends on a daily basis (Tr. 363-65). As noted above, these statements were only one of several factors considered by the law judge in finding that the plaintiff was not mentally incapacitated. Furthermore, contrary to the plaintiff's argument, those statements were not outdated because they were made nearly four years into the alleged disability period. Moreover, although the plaintiff's mood may have worsened over time, there are records which show the plaintiff continued to function adequately. For example, in October 2010, despite the plaintiff's report that she has increased anxiety and restlessness, the plaintiff

did not identify any activities that she could not perform independently (Tr. 813, 817).   Additionally, the plaintiff reported to Dr. Andres Martin in February 2011 (just a few months prior to the administrative hearing) that, despite her severe anxiety, "[s]he does not need assistance for ADL's" (Tr. 807).

The plaintiff also argues that the law judge failed to discuss medical records from, and substituted his opinion for that of, the plaintiff's treating psychiatrist Dr. Martin (Doc. 24, pp. 6-7).   The record reflects that Dr. Martin met with the plaintiff twice, and the second meeting was only a 15-minute medication review (see Tr. 804, 806).   Therefore, it is questionable whether Dr. Martin's opinion is entitled to the weight given to that of a treating physician, as Dr. Martin clearly lacked the detailed and longitudinal perspective of the plaintiff's mental condition, which the regulations indicate is a significant reason for giving the opinions of treating physicians substantial weight.   See 20 C.F.R. 416.927(c).

While the law judge does not specifically mention Dr. Martin in the decision, that omission is harmless error, if error at all, because Dr. Martin does not opine as to the plaintiff's mental functional capacity.   Furthermore,

Dr. Martin's progress notes reflect that, although the plaintiff's mood was anxious and depressed, she was oriented in time, place, and person; she was cooperative and exhibited appropriate behavior; her thought process was logical, congruent and goal-directed; there was no abnormal thought content; her cognitive functions were intact; and she was not a suicidal or homicidal risk (Tr. 804, 806, 807, 808).

The closest Dr. Martin came to opining on the plaintiff's mental functioning is his assessment of a GAF of 50 (Tr. 809), which took into account the plaintiff's various other problems, such as her multiple physical ailments and lack of income (Tr. 807-08). Notably, when Dr. Martin assessed the plaintiff with a GAF score of 50 it was after his first meeting with the plaintiff (see Tr. 809). Therefore, the law judge was not obligated to give that opinion substantial weight.   See Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1160 (11th Cir. 2004); McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

Furthermore, as discussed above, the law judge considered the plaintiff's GAF score of 50 in connection with Dr. Subervi's assessment, and found that it supported moderate, but not disabling, mental impairments (see

Tr. 24). The plaintiff makes no cogent argument that Dr. Martin's assessment of a GAF score of 50 compelled the law judge to find that she had a more limited residual functional capacity (Doc. 24, p. 7). See Adefemi v. Ashcroft, supra, 386 F.3d at 1027. To the contrary, the plaintiff acknowledges a GAF score is not dispositive of disability (Doc. 24, p. 7). Furthermore, it has been held that a GAF score of "50 ... indicates [that a plaintiff] could perform some substantial gainful activity." Hillman v. Barnhart, 48 Fed. Appx. 26, 30 n.1 (3d Cir. 2002); see also Jones v. Astrue, 494 F.Supp.2d 1284, 1288 (N.D. Ala. 2007); Speagle v. Astrue, 2010 WL 750341 at *10-*11 (M.D. Fla. 2010). Such a conclusion is clearly reasonable in this case, considering the numerous mental status examinations which show that, despite the plaintiff's subjective complaints of mental symptoms, the plaintiff was oriented x3, her cognitive functioning was intact, her thought process was logical and organized, and there was an absence of hallucinations, psychosis, and suicidal or homicidal thoughts. Thus, the law judge could reasonably conclude in this instance that the GAF score of 50 reflected moderate, but not disabling, mental functional limitations. For these reasons, the omission of any reference to Dr. Martin in the decision does not constitute reversible error.

Moreover, the law judge did not improperly substitute his opinion for that of Dr. Martin. Rather, it is the law judge's duty as fact-finder to consider the evidence and determine the plaintiff's residual functional capacity. Thus, the determination of the plaintiff's functional limitations in assessing the plaintiff's residual functional capacity is an issue assigned to, and reserved to, the Commissioner. See 20 C.F.R. 416.927. Further, the plaintiff does not identify any additional mental functional limitation imposed by Dr. Martin, or any other physician, that the law judge should have included in the mental residual functional capacity.

In sum, the law judge has stated adequate reasons for his determination of the plaintiff's mental residual functional capacity, and those reasons are supported by substantial evidence. See Adefemi v. Ashcroft, supra. Accordingly, the plaintiff's argument that the law judge mischaracterized the evidence regarding the plaintiff's mental impairments and improperly substituted his opinion for that of Dr. Martin is unpersuasive.

B. The plaintiff's second argument is that the law judge erred by failing to find that she has a severe impairment of obesity (Doc. 24, pp. 7-9). This contention is unavailing for several reasons.

In the first place, the plaintiff wholly fails properly to develop this assertion. The plaintiff was warned in the scheduling Order that she had to support her discrete challenges with "citations to the record of the pertinent facts" (Doc. 17, p. 2). However, in arguing that the law judge failed to find a severe impairment of obesity, the plaintiff does not even cite to one diagnosis of obesity, and she does not show that, due to her alleged obesity, she has specific functional limitations beyond those found by the law judge in his residual functional capacity (see Doc. 24, pp. 7-9). Therefore, this argument could be disregarded for insufficient development (see Doc. 17).

Furthermore, there is no evidence that the plaintiff was obese at the hearing, as she did not testify to her weight, nor did she testify that obesity was a factor in her alleged inability to work. Also, the plaintiff's attorney provided a prehearing memorandum which set forth the impairments upon which the plaintiff based her claim of disability (Tr. 390-91). Obesity was not mentioned (id.).[5] Similarly, the plaintiff did not allege obesity as a basis for her alleged disability in documents submitted with her disability claim (see,

---

[5] Notably, plaintiff's counsel did not allege this obesity contention in the appeal to the Appeals Council either (Tr. 393-94).

-16-

e.g., Tr. 317, 344).   Because the plaintiff did not make any contention to the law judge that she was impaired due to obesity, the law judge did not err because he did not consider an allegation of obesity.  Street v. Barnhart, 133 Fed. Appx. 621, 627 (11th Cir. 2005); Robinson v. Astrue, 365 Fed. Appx. 993, 995 (11th Cir. 2010).

In all events, the contention is unavailing.  The entirety of the plaintiff's argument is that her weight increased from 176 pounds in 2009 to 195 pounds in February 2011 and that, at 195 pounds, her "Body Mass Index is 31.5 which is considered obese according to the National Health Institute..." (Doc. 24, pp. 8-9).  Thus, in asserting this argument, the plaintiff has not cited to any record evidence that she is obese; rather, she cites to a National Institutes of Health website that, at her height of 5'7" (see Tr. 606) and weight of 195 pounds, her body mass index (BMI) is in the obese range.  Notably, with these figures, her BMI is actually 30.5, which is barely in the obese range (30 and higher).

Furthermore, even assuming the National Institute of Health BMI guideline has any meaningful weight in determining disability where, as here, the obesity score is just marginally met, the evidence does not

establish that the plaintiff was obese for at least a twelve-month period. Thus, the plaintiff has merely cited to a February 2011 progress note from Dr. Martin which states her weight increased from 185 to 195 pounds (Doc. 24, p. 8).

Although the plaintiff's weight has fluctuated during the alleged disability period of more than five years, the medical records reflect that she was not even close to being obese for the great majority of this period. See, e.g., Tr. 444 (174 pounds in June 2006); Tr. 438 (172 pounds in November 2006); Tr. 435 (161 pounds in March 2007); Tr. 432 (179 pounds in July 2007); Tr. 571 (172 pounds in March 2007); Tr. 602 (178 pounds in September 2009); Tr. 555 (168 pounds in December 2009); Tr. 552 (171 pounds in January 2010); Tr. 789 (185 pounds in June 2010); Tr. 782 (183 pounds in September 2010); Tr. 804 (195 pounds at end of February 2011 since starting Seroquel); Tr. 873 (194 pounds in March 2011). Further, the plaintiff indicates that Seroquel, a psychiatric medication prescribed by Dr. Martin, caused her to gain weight (Doc. 24, pp. 8-9). However, she reported this side effect to Dr. Martin in February 2011 and he immediately discontinued the medication (Tr. 804).

-18-

Moreover, there is no indication that her weight imposes any functional limitations upon the plaintiff beyond those found by the law judge. Thus, she does not identify any medical evidence showing that obesity affected her ability to work or warranted the imposition of physical restrictions beyond those already specified. See Timmons v. Commissioner of Social Security, ___ Fed. Appx. __, 2013 WL 3388234 at *8 (11th Cir.) (the law judge did not err in failing to discuss a physician's opinion that obesity may exacerbate the claimant's symptoms because the law judge had considered the medical evidence and reports of the claimant's activities which supported the residual functional capacity despite any effect his obesity had on his symptoms). Significantly, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work." Wind v. Barnhart, supra, 133 Fed. Appx. at 690 (quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)). However, the plaintiff does not suggest any additional functional limitations that are warranted due to obesity (Doc. 24, pp. 8, 9).

The plaintiff also argues in a conclusory manner that the law judge failed to consider the combined effect of the impairments (id., p. 9). The law judge clearly recognized that he had to consider the combined effects of the plaintiff's impairments (Tr. 19). The law judge, in particular, stated that he must consider all impairments, including impairments that are not severe, in determining the plaintiff's residual functional capacity (id.). These statements demonstrate that the law judge properly considered the combined effects of the plaintiff's impairments.  Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002).

The plaintiff argues, specifically, that a "remand is warranted to evaluate the cumulative effects of obesity on her impairments of degenerative disc disease and diabetes mellitus" (Doc. 24, p. 9).  Due to the plaintiff's degenerative disc disease, the law judge limited the plaintiff to light work with a sit/stand option, and no repetitive stooping or bending (Tr. 22).  As indicated, the plaintiff does not allege, much less show, any additional functional limitation due to obesity.  As to the plaintiff's diabetes mellitus, the law judge found that "it appears to be well-controlled with medication and

treatment" (Tr. 24). The plaintiff has not cited to any medical record showing that her alleged obesity has made that finding inaccurate.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**.   The Clerk shall enter judgment accordingly and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 30th day of July, 2013.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE